**UNITED STATES v. BOWEN.**

No. 2579.

United States District Court
N. D. Georgia, Rome Division.

Jan. 3, 1951.

J. Ellis Mundy, U. S. Atty. for the Northern District of Georgia, Harvey H. Tisinger, Asst. U. S. Atty. for the Northern District of Georgia, Atlanta, Ga., for plaintiff.

Pittman, Hodge & Kinney, Dalton, Ga., for defendant.

HOOPER, Judge.

This is a motion filed pursuant to Section 2255, Title 28 U.S.C.A. Movant Hugh Bowen was convicted in the Rome Division of this court, and on February 16, 1933, given a life sentence on a charge of murder. This motion is based upon two grounds.

The first ground contends that the United States did not have criminal jurisdiction over Chickamauga Park where the homicide occurred but this contention has been previously made by movant and overruled and there is no necessity to rule upon it again. Bowen v. Johnston, Warden, 306 U.S. 19, 59 S.Ct. 442, 83 L.Ed. 455.

The other ground is based upon an alleged illegally obtained confession introduced upon his trial. The facts as to said confession developed upon this hearing are substantially as follows:

The movant Hugh Bowen and John Smith were jointly indicted for the murder of one Kingston. The Government contended defendants planned to find some person resembling Hugh Bowen and kill him, identify his body as that of Bowen, collect insurance benefits on policies naming Bowen, and divide the proceeds. The dead body of Kingston was found and Bowen and Smith fled the state. Smith was arrested in Helix, Oregon, and then Bowen was arrested in Centralia, Washington, by Sheriff C. C. Taylor, of Chattanooga, Tennessee. At this point the circumstances begin which lead up to the alleged confession.

Centralia police confined Bowen on the basis of a telephone call from Taylor, who arrived in Centralia on February 12, 1931. At two o'clock P.M. the next day, February 13, Taylor took Bowen on the train to Portland, Oregon, arriving at 2:00 A.M. on February 14. Bowen had been suffering from a kidney ailment and claims that the Centralia authorities had taken from him medicine prescribed for this ailment, but this court does not find that as a fact. It is true, however, as Taylor himself testifies, that Bowen was not well at the time this train trip commenced. On arriving in Portland, Oregon at 2:00 A.M. on February 14, Sheriff Taylor delivered Bowen to the local authorities who placed him in jail. Bowen claims the latter interviewed him all of that night but I do not find that to be a fact. Evidently, however, the Portland authorities did question Bowen the next morning for Taylor testifies that he received a telephone call that morning to the effect Bowen wished to make a statement, which statement was made at about 10:00 A.M. This first statement was later destroyed and is not in evidence here but it appears to have been merely a general denial of the crime. When this statement was being taken Bowen complained of pain from his kidneys and a doctor was called, who arrived about 2:00 P.M. and gave a prescription, which was filled and turned over to Sheriff Taylor and by him administered to Bowen during the day. Bowen's claim that this prescription was a drug appears to be utterly without foundation.

During the interval between the two statements Bowen was confronted with news that Smith had made a statement involving Bowen as perpetrator of the murder, whereupon Bowen informed Taylor of his wish to make a new statement; a stenographer was called in and this alleged confession was dictated. Apparently it was signed on February 14, as it bears that date, though Sheriff Taylor, who was rather vague as to dates, testified, it was signed on the next day. This second statement recites that while Bowen, Smith and Kingston were together in a car in Chickamauga National Park, the two latter got into a fight while Bowen was asleep on the back seat; that Bowen awoke and found Kingston had been killed; that Smith with a pistol forced Bowen to go away with him, which he did.

It will be seen that this statement is not strictly speaking a confession at all, as it denies guilt, but it does incriminate Bowen

to the extent of showing his presence at the scene of the crime. Out of regard for Bowen's rights it is here treated as a confession, for even incriminating statements should be voluntary.

Bowen testifies that when this statement was introduced in evidence upon his trial it was objected to, the grounds of objection not being stated, but that no objection was made to its admission because of the alleged improper methods by which it was obtained as are urged in this motion. Neither was any complaint as to the obtaining of this confession made by Bowen in two proceedings filed by him prior to this. Bowen v. Johnston, supra, 306 U.S. 19, 59 S.Ct. 442, 83 L.Ed. 455; Bowen v. United States, 5 Cir., 134 F.2d 845, certiorari denied, 319 U.S. 764, 63 S.Ct. 1320, 87 L.Ed. 1714. His reasons for not sooner making such complaint are rather vague, his confinement being primarily the reason assigned.

On his trial for murder, Bowen was represented by able counsel, Honorable M. Neil Andrews, subsequently District Attorney of this district, and at the time of this hearing a judge of this court and readily available as a witness had Bowen called him. With full opportunity to confer with his counsel at the time of his trial, Bowen made no attempt to have this alleged confession ruled out, but on the other hand took the stand in his own behalf and voluntarily swore under oath to substantially the same facts as therein contained, admitting his presence at the scene of the crime and basing his defense upon the same contentions therein made. Even at this hearing movant does not attempt to show the statement to be untrue, other than to state generally that it is untrue. He does not now swear that he was not present at the scene of the murder. After basing his defense upon the truth of the statement and having lost his case, he now, some seventeen years later, for the first time urges its untruth. This motion most likely was made because of subsequent rulings of our courts, cited below, laying down more strict rules for the admission of confessions than those which prevailed at the time of Bowen's trial.

Judge E. Marvin Underwood, who presided at Bowen's trial, was also residing near Atlanta, was readily available as a witness but was not called at this hearing. In the files of this case appear notes taken upon the trial by Judge Underwood, which, by stipulation of defense counsel subsequent to the hearing, are considered as being in evidence.

█ 1. This motion, filed pursuant to Section 2255, Title 28 U.S.C.A. is in the nature of a writ of error coram nobis, and must show that the judgment complained of is subject to collateral attack. Birtch v. U. S., 4 Cir., 173 F.2d 316; Taylor v. U. S., 4 Cir., 177 F.2d 194. This motion may not be used however, to review proceedings of a trial as upon appeal or writ of error. Taylor v. U. S., supra; Dennis v. U. S., 4 Cir., 177 F.2d 195. There are decisions holding that the admission in evidence by the trial judge of a confession unlawfully obtained is the subject matter of objections made at the trial, and of an appeal. However, it is held that a conviction based in part on a confession which is obtained in violation of the constitutional rights of an accused is violative of due process of law. Chambers v. State of Florida, 309 U.S. 227, 60 S.Ct. 472, 84 L. Ed. 716. This motion will lie if it appears from this hearing that "there has been the denial of the substance of a fair trial". Howell v. U. S., 4 Cir., 172 F.2d 213, 215, certiorari denied 337 U.S. 906, 69 S.Ct. 1048, 93 L.Ed. 1718. It is the duty of this court to consider this motion, and all testimony adduced thereunder, and determine whether movant has been denied the substance of a fair trial by reason of the introduction in evidence of the alleged confession.

█ 2. However, under the facts of this case, it does not appear that movant's conviction was brought about in whole or in part by the alleged confession, because movant, upon his trial, after full opportunity to consult with able counsel, adopted the statements in said alleged confession as being true, and under oath upon the witness stand testified they were true. It has frequently been held that if an accused

makes a confession under duress which would render it inadmissible in evidence, that a subsequent confession voluntarily made is admissible in evidence. 22 C.J.S., Criminal Law, § 817, pp. 1436, 1437. Confessions made under oath in open court are sometimes referred to as judicial confessions, and it might be said that that is. the type of confession in this case upon which movant's conviction was based.

■■ 3. It has also been ruled that a judgment of conviction should not be set aside unless it appears that a retrial will result in a different judgment. U. S. v. Moore, 7 Cir., 166 F.2d 102. That does not appear in this case for movant has, at all times, taken the position in court and out of court that he was present at the time and place of the murder of which he was accused, and does not deny that fact even upon this hearing. There is nothing to indicate that he would not take the same position on another trial if same were accorded to him.

For reasons stated above this motion is being denied, and findings of fact, conclusions of law and judgment of the court based thereon are being filed.