UNITED STATES of America,
Plaintiff-Appellee,

v.

Robert L. GAMBOA,
Defendant-Appellant.

No. 76–2881
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Dec. 3, 1976.

* Rule 18, 5 Cir., see *Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.

Ruben Sandoval, San Antonio, Tex., for defendant-appellant.

John E. Clark, U. S. Atty., LeRoy Morgan Jahn, Ronald P. Guyer, Asst. U. S. Attys., San Antonio, Tex., for plaintiff-appellee.

Before WISDOM, GEE and TJOFLAT, Circuit Judges.

PER CURIAM:

The appellant-defendant, Robert L. Gamboa, seeks a remand of this case to the district court for resentencing. He contends that his sentences of ten years for seven counts of possession of unregistered firearms without serial numbers and of five years for possession of a firearm during the commission of a felony are improper.

On December 30, 1975, the defendant's car exploded outside Jack's Ice House in San Antonio, Texas. Police and firemen arrived to discover the defendant, wearing rubber gloves, sitting in his car engulfed in flames. Police officers ascertained that the cause of the explosion was the detonation of a homemade pipe-bomb attached to a small alarm clock. Two other pipe-bombs, which had not exploded, were found in the auto along with an unloaded, unregistered pistol. On January 2, 1976, police officers searched the appellant's house with the permission of his wife and found in the attic a rifle which had been modified to fire automatically in the manner of a machine gun.

At the hearing the defendant adduced evidence that he, his wife, and a neighbor's son were preparing to leave on a deer hunting trip the evening of the explosion and that the pipe-bombs were in the defendant's car for the purpose of blasting some trees and a stump on the property leased for deer hunting. In addition, the defendant testified that he had purchased rubber gloves for use in skinning deer shortly before driving to the ice house and, after trying the gloves on for size, had decided to leave them on to handle the block of ice he intended to purchase for his hunting trip. The defendant also offered testimony that he customarily used the pistol found in the automobile for target practice, and his wife testified that the rifle discovered in the attic was part of her husband's gun collection.

In cross-examination the prosecuting attorney suggested as a possible alternative explanation and motive for the defendant's activities that there was an unfriendly connection between a member of the defendant's family and a person working at the ice house. The defendant testified, however, that neither he nor his family had any involvement with an employee of the ice house; and the prosecutor did not offer any further evidence to substantiate his suggestion. At the close of the hearing the defendant reaffirmed his plea of nolo contendere, and the court found him guilty on all counts.

The defendant contends that the trial judge committed a gross abuse of discretion in sentencing him to a prison term of ten years, because the court relied on improper or incorrect information and failed to consider all circumstances relevant to sentencing. In addition, the defendant claims that in the particular circumstances of this case, the five- and ten-year terms imposed on the defendant were so excessive as to constitute cruel and unusual punishment in violation of the Eighth Amendment.

A sentencing court exercises broad discretion which is not subject to appellate review "except when arbitrary or capricious action amounting to a gross abuse of discretion is involved." *United States v. Weiner,* 5 Cir. 1969, 418 F.2d 849. *See United States v. Frontiero,* 5 Cir. 1971, 452 F.2d 406; *Rodriguez v. United States,* 5 Cir.

1968, 394 F.2d 825. Here the sentence imposed by the court was within statutory limits.[1] In arriving at the sentence the court had available a presentence report prepared by the probation office, and in response to the opportunity given him by the court to correct or amend the report the defendant's counsel observed that the report was fair and comprehensive. The defense attorney and the defendant were also permitted to present their reasons to the court for seeking probation. In imposing sentence the court rejected the alternatives of probation and an indeterminate sentence as inappropriate for the defendant.

▮ The defendant contends that the court took into account the unsupported implication that the defendant intended to use the pipe-bombs against a person or persons located at the ice house. He argues that the court therefore considered improper or incorrect information or assumptions in arriving at the sentence. There is no evidence on the record that the court based the sentence in any part on the prosecutor's unsupported suggestion of the defendant's purpose. In *Townsend v. Burke,* 1948, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690, the Supreme Court concluded that the defendant was sentenced on the basis of assumptions about his criminal record which were materially untrue. As a consequence, the Court held: "Such a result, whether caused by carelessness or design, is inconsistent with due process of law, and such conviction cannot stand." 334 U.S. at 740, 68 S.Ct. at 1255. *See United States v. Tucker,* 1972, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592. Here the record does not buttress the defendant's contention that the district court relied on the prosecutor's unsubstantiated suggestions about the defendant's motive.

Certainly the prosecutor did not act improperly in asking the defendant about a possible motive for his actions other than clearing trees on the deer lease. The defendant's reliance on *United States v. Espinoza,* 5 Cir. 1973, 481 F.2d 553, and *Townsend v. Burke,* is misplaced for unlike those cases the defendant here had an opportunity to respond to and correct or amend all evidence and information before the trial court.

▮ As a corollary, the defendant contends that the court arrived at the ten-year total sentence because of disbelief in the defendant's and his wife's testimony concerning the planned use of the three pipe-bombs. Although it is not clear whether the trial court disbelieved the testimony, this Court has held that one of the factors a trial judge may take into account in arriving at the length of a sentence is his feeling that a defendant has perjured himself. *United States v.'Nunn,* 5 Cir. 1976, 525 F.2d 958.

▮ Because the trial court failed to enumerate the reasons for the sentence imposed on the defendant, it is not altogether clear to us exactly what factors were considered by the court. For a trial court to announce its reasoning in imposing a sentence obviously enhances an appellate court's ability to give effective review of the sentencing process.[2] Whether a statement of reasons should be required as part of the sentencing will not be decided here, however, for the record indicates that the defendant in this case had a full and complete opportunity to respond to all information before the district court. In addition, we cannot conclude from the record that the trial court abused its discretion in arriv-

---

1. 26 U.S.C. § 5871 (1976) provides for a maximum of ten years and a $10,000 fine for each of Counts 1 through 6 against the defendant as well as for Count 8. 18 U.S.C. § 924(c) establishes a maximum of ten years for Count 7.

2. Some commentators contend that the trial judge should be required to set forth his reasoning in determining a sentence. *See, e. g.,* Symposium, Appellate Review of Sentencing, 32 F.R.D. 257, 263, 274–275 (1962). In addition, the increasing tendency of appellate courts to review sentencing decisions, *see* American Bar Association Project on Minimum Standards for Criminal Justice, Standards, Relating to Appellate Review of Sentences (Tent. Draft 1967); R. Dawson, Sentencing: The Decision as to Type, Length, and Conditions of Sentence, 386–387 (1969), suggests that it may be necessary for trial courts to state the reasons for the sentences they impose in order to facilitate the review process.

ing at the sentence imposed. The record suggests that the district court attempted to take into account the defendant's criminal record, injuries he suffered as a result of the explosion, the appropriateness of probation to rehabilitation of the defendant, and the seriousness of the offenses to which the defendant pleaded nolo contendere in arriving at the sentence.

■ Finally, the defendant contends that in the particular circumstances of this case, the sentence given him was so excessive as to constitute cruel and unusual punishment in violation of the Eighth Amendment. The standards for judging whether a sentence amounts to cruel and unusual punishment are whether the conditions of confinement shock the conscience, whether the sentence is greatly disproportionate to the offense, or whether it offends evolving notions of decency. *United States v. Thevis,* 5 Cir. 1976, 526 F.2d 989; *Trop v. Dulles,* 1958, 356 U.S. 86, 78 S.Ct. 590, 2 L.Ed.2d 630.

■ The concurrent ten-year and five-year sentences imposed by the trial court for the defendant's actions do not meet any of these standards. The maximum sentence the defendant could have received for the eight counts for which he was found guilty was eighty years imprisonment and a $70,000 fine. The concurrent sentences received by the defendant are well below that maximum. In addition, the record reveals that the court took into account the injuries suffered by the defendant as a result of the explosion as well as his need for proper medical care in arriving at the final sentence and in making a recommendation as to places of incarceration. Therefore we conclude that the defendant cannot prevail with the contention that he suffered cruel and unusual punishment.

Although the district court is free, if that seems appropriate, to reduce the defendant's sentence, pursuant to Rule 35, Fed.R. Crim.P., within 120 days after receipt of this Court's mandate of affirmance, there are no grounds upon which the sentence and judgment entered against the defendant can be reversed.

AFFIRMED.