**UNITED STATES of America, Appellee,**

v.

**Pierre BLUE HORSE, Appellant.**

**No. 87–5375.**

United States Court of Appeals,
Eighth Circuit.

Submitted April 11, 1988.

Decided Aug. 31, 1988.

Rehearing Denied Nov. 22, 1988.

David L. Braun, Pierre, S.D., for appellant.

Mikal Hanson, Asst. U.S. Atty., Pierre, S.D., for appellee.

Before JOHN R. GIBSON and BEAM, Circuit Judges, and DUMBAULD,* Senior District Judge.

JOHN R. GIBSON, Circuit Judge.

Pierre Blue Horse appeals his conviction of four counts of aggravated sexual abuse in violation of 18 U.S.C. § 2241(a) (Supp. IV 1986). The charges were based on a series of sexual assaults occurring over an eight-hour period on February 19 and 20, 1987. The only issues raised on appeal are the district court's[1] refusal of an instruction concerning Blue Horse's statement to a criminal investigator following the incident, and the court's refusal to admit into evidence medical records prepared by the victim's examining physician. We affirm the judgment of the district court.

On the night of February 19, 1987, Blue Horse went to the residence of the victim, G.D., in Mission, South Dakota. He knocked on the door and was admitted by her. The testimony concerning the events thereafter is in dispute and for the most

---

* The HONORABLE EDWARD DUMBAULD, Senior United States District Judge for the Western District of Pennsylvania.

1. The Honorable Donald J. Porter, Chief United States District Judge for the District of South Dakota.

part details are not essential to the issues before us. According to G.D., Blue Horse kept her within her home the entire night; he repeatedly assaulted, abused and raped her for a period of eight hours; and he choked her, causing her to fear that he would kill her. Blue Horse admitted to two acts of sexual intercourse, testifying that they were voluntary and consensual in nature, but denied any forced sexual abuse, assault, rape, or attempted murder.

Following the incident, on the morning of February 20, G.D. was taken to a hospital in Valentine, Nebraska by law enforcement officers and examined by Dr. Stephen Senseney, who prepared medical records and reports. One report indicated that Dr. Senseney had asked G.D. the date of her last sexual intercourse, and G.D. responded that it had been one week before the assault. Dr. Senseney was called to testify by the government at trial and was cross-examined by Blue Horse's counsel. At the conclusion of Senseney's testimony, Blue Horse's counsel made an offer of proof and sought to introduce the medical records and reports Senseney had prepared. The district court refused to admit these records.

Following G.D.'s medical examination, Blue Horse was apprehended and questioned by a criminal investigator. Blue Horse was advised of his *Miranda* rights and voluntarily waived them. He admitted to two acts of voluntary sexual intercourse with G.D., but denied any type of forced sexual abuse, and testified that G.D. was free to leave the house. At trial, counsel for Blue Horse elicited these statements during cross-examination of the criminal investigator. After the close of the evidence, Blue Horse offered an instruction

concerning this statement, which the district court denied.[2]

The district court granted Blue Horse's motion to acquit on Count I of the indictment, charging assault with intent to commit murder by strangulation, and the case was submitted to the jury, which rendered verdicts of guilty on the four remaining charges of sexual abuse. The district court entered concurrent sentences of twenty years with respect to each count.

I.

Blue Horse first argues that he was entitled to an instruction directing the jury to consider the circumstances and weight to be given to his out-of-court statement to the criminal investigator. He contends that the instruction pertained to his theory of defense, particularly his claim that the acts of sexual intercourse were consensual. *See, e.g., United States v. Webster,* 769 F.2d 487, 490–91 (8th Cir.1985). He also argues that the instruction was required by 18 U.S.C. § 3501(a) (1982), because his statement to the criminal investigator, while primarily exculpatory, included incriminating admissions that he was at G.D.'s house on February 19 and 20, 1987, and that he had sexual intercourse with her. *See* 18 U.S.C. § 3501(e).

The district court rejected the proposed instruction on the ground that Blue Horse's statement was exculpatory, elicited by him at trial, and admitted without objection. Blue Horse did not raise any issue as to the voluntariness of his statement before the district court, nor has he done so on appeal. In fact, Blue Horse confirmed the elements of the out-of-court statement at issue here in his own trial testimony.[3] Other circuits have held that if the defend-

2. The proposed instruction read as follows:
   You have heard testimony that the Defendant, Pierre Blue Horse, made a statement to an FBI agent. When you consider this evidence you must decide:
   First, did the Defendant in fact make the statement?
   Second, if the Defendant did make the statement, how much weight should you give to it? In making these decisions, you should consider all of the evidence, including the circum-

stances under which the statement may have been made. After you have reviewed these matters, you may give such weight to the statement as you feel it deserves.

3. There is no dispute that Blue Horse was allowed to introduce testimony about the circumstances in which this statement was made, as required by *Crane v. Kentucky,* 476 U.S. 683, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986).

ant does not raise a genuine factual issue regarding the voluntariness of an incriminating out-of-court statement, a section 3501(a) instruction is not required. *United States v. Bondurant,* 689 F.2d 1246, 1249–50 (5th Cir.1982); *United States v. Groce,* 682 F.2d 1359, 1366 (11th Cir.1982); *United States v. Fera,* 616 F.2d 590, 594–95 (1st Cir.), *cert. denied,* 446 U.S. 969, 100 S.Ct. 2951, 64 L.Ed.2d 830 (1980). We are convinced we should adopt and apply this rule in this case.

■ With respect to Blue Horse's claim that the instruction pertained to his theory of defense, we begin with the basic principles that the instructions must be viewed as a whole, in the context of the entire trial. *See, e.g., Cupp v. Naughten,* 414 U.S. 141, 146–47, 94 S.Ct. 396, 400–01, 38 L.Ed.2d 368 (1973); *United States v. McMillan,* 820 F.2d 251, 256 (8th Cir.), *cert. denied,* — U.S. —, 108 S.Ct. 234, 98 L.Ed.2d 193 (1987). Moreover, "[a] district court has wide discretion in formulating appropriate jury instructions," and "[a] defendant is not entitled to a particularly worded instruction where the instructions given adequately and correctly cover the substance of the requested instruction." *United States v. Walker,* 817 F.2d 461, 463 (8th Cir.) (citations omitted), *cert. denied,* — U.S. —, 108 S.Ct. 181, 98 L.Ed.2d 134 (1987). The district court instructed the jurors that they were the sole judges of the credibility of the witnesses, including the defendant, and of the weight to be given their testimony. The jurors were told that they should consider a variety of factors in making their credibility determinations, including the extent to which the witnesses' testimony was supported or contradicted by other credible evidence. The jury was specifically instructed on the need to find, beyond a reasonable doubt, that the defendant knowingly used force in committing the alleged sexual acts and that the victim did not consent. The jury was also informed that the defendant's intent, as well as the consent of the victim, could be inferred from their statements, together with all surrounding facts and circumstances.

■ Taking the instructions as a whole, we are satisfied that Blue Horse's theory of defense was adequately and correctly presented to the jury, *see id.* at 463, and that the jury was fully informed of its duty to evaluate the circumstances surrounding Blue Horse's out-of-court statement. The district court did not abuse its discretion in refusing the proposed instruction. *Id.* Further, we are satisfied that if there was any error in failing to give a specific instruction dealing with the out-of-court statement, such error was harmless. *See McMillan,* 820 F.2d at 256; *see also United States v. Standing Soldier,* 538 F.2d 196, 203–204 (8th Cir.), *cert. denied,* 429 U.S. 1025, 97 S.Ct. 646, 50 L.Ed.2d 627 (1976).

## II.

■ Blue Horse also claims that the district court erred in refusing to admit the medical records prepared by G.D.'s examining physician. The focus of Blue Horse's argument on appeal is that the records would demonstrate that G.D.'s injuries were minor, indicating no assault or use of force, and confirm inconsistencies in G.D.'s testimony about whether she took a bath following the incident. The district court's record, however, shows that the offer of proof was made to introduce evidence of G.D.'s past sexual behavior, particularly the notation in the physician's report regarding G.D.'s last sexual intercourse. Record at 34–37. Although the government stated that it would not object to admission of the records if this notation were deleted, Blue Horse did not seek their introduction in that form.

Rule 412 of the Federal Rules of Evidence specifically bars admission of evidence of the past sexual behavior of an alleged rape victim. While the rule includes three exceptions, Blue Horse has not argued on appeal that any of these are applicable, and we are satisfied that they are not. *See generally United States v. Shaw,* 824 F.2d 601, 602–608 (8th Cir.1987), *cert. denied,* — U.S. —, 108 S.Ct. 1033, 98 L.Ed.2d 997 (1988). The trial transcript demonstrates that Blue Horse was allowed to examine Dr. Senseney at length and to

inquire specificially into the extent and freshness of G.D.'s injuries and the possibility that they were not caused by the use of force. Blue Horse was also allowed to question Senseney and G.D. about whether G.D. reported taking a bath following the incident. With the exception of the reference to G.D.'s last sexual intercourse, the medical records were cumulative of this testimony. Accordingly, the district court did not err in ruling that the danger of unfair prejudice from the reference to G.D.'s past sexual behavior substantially outweighed the probative value of the records, and in excluding the records on this basis. Fed.R.Evid. 412(c)(3). *See also* Fed.R.Evid. 403; *United States v. One Feather*, 702 F.2d 736, 739 (8th Cir.1983).

The judgments of conviction entered by the district court are affirmed.